PER CURIAM.
This disciplinary proceeding is before us for consideration of a referee’s report finding professional misconduct. The referee recommends that Stone be suspended for six months for inadequate preparation, representing clients with conflicting interests, and arranging a usurious loan. Stone has petitioned for review before this Court, arguing that suspension is unwarranted. We have jurisdiction. Art. V, § 15, Fla. Const. We disagree in part with the report and reprimand Stone publicly.
Carl Ashton leased to Christopher Lange a parcel of land. C.C. Salvage, Inc. was created to operate a salvage yard on the land, with Lange holding five shares in the corporation and Herman Chadwick and his relatives holding the remaining nine. Respondent Stone drew up the incorporation papers. Lange was sole holder of the lease; Chadwick held the salvage license in his name only. Ernest Chick entered into a verbal agreement with Chadwick to buy either all fourteen shares, or if Lange refused to sell his five shares, only Chadwick’s nine shares. Chadwick and Chick contacted Stone, who had represented C.C. Salvage on other occasions, and asked him to draw up a bill of sale. Stone created a document entitled “Articles of Agreement,” wherein C.C. Salvage purported to sell to Chick alternatively either nine or fourteen shares in the corporation. Closing was held at Stone’s office several weeks later. Chick paid Stone no fee for drafting the agreement or for his role in closing, nor did Stone tell Chick that he was representing him in the sale. C.C. Salvage, on the other hand, paid Stone for arranging and conducting the transaction. Lange subsequently refused to sell Chick his five shares and, as holder of the lease, filed a successful eviction suit against Chick and C.C. Salvage. Stone represented Chick in this suit. During the course of his dealings with C.C. Salvage, Stone arranged for a loan to be made by R.C. Lockhart to C.C. Salvage in the form of a personal check for $4,000. Stone wrote the following note on the face of the check: “4800 with this 4000.00 repayable 90 days.”
The Florida Bar filed a two-count complaint against Stone and at the conclusion of the ensuing disciplinary proceeding, the referee reached the following conclusions as to guilt:
[1.] Although the evidence regarding the original sale of the stock from Mr. Chadwick to Mr. Chick is contradictory, this Referee finds that there is insufficient evidence that the Respondent knowingly withheld information about the lease from Mr. Chick. The evidence does indicate, however, that the Respondent was either woefully unprepared for the service he rendered to whoever his client was in the transaction or that he was clearly incompetent. The Respondent purported to document a sale of stock from Mr. Chadwick to Mr. Chick by preparing an instrument entitled “Articles *462 of Agreement” between C C Salvage Inc. and Mr. Chick. Since the corporation was clearly not a party to the transaction it is a complete mystery to this Referee what purpose this document was supposed to serve. Even if we assume that the document was appropriate in a convoluted way it makes reference in the first paragraph to there being attached to the Articles an inventory, presumably of the corporation’s assets. There is no evidence that this inventory was either prepared or attached.
2. The evidence regarding the allegations in Count II of the Complaint demonstrate that the Respondent was the primary negotiating party in arranging what was clearly a criminally usurious loan. He either negotiated or dictated the terms of repayment of the loan with no suggestion or direction from Mr. Lockhart, the individual who provided the funds for the loan.
The referee then made the following recommendations as to guilt:
Based upon the findings that have been set forth it is recommended that the Respondent be found guilty of violating the following Disciplinary Rules of The Florida Bar’s Code of Professional Responsibility:
A. Count I
(1) 5-105(A) for accepting employment when the exercise of his independent professional judgment on behalf of a client was likely to be adversely affected by the acceptance of the proffered employment.
(2) 5-105(B) for continuing multiple employment when the exercise of his independent professional judgment on behalf of a client was likely to be adversely affected by his representation of another client.
(3) 6-101(A)(2) for handling a legal matter without adequate preparation.
(4) 6-101(A)(3) for neglecting a legal matter entrusted to him.
B. Count II
(1) 1-102(A)(3) for engaging in illegal conduct involving moral turpitude.
The referee recommended that Stone be suspended for six months. Stone has petitioned for review here, claiming that suspension is unwarranted.
In his petition, Stone does not contest referee’s recommendations (1) — (3) under Count 1. He does assert that recommendations (4) under Count 1 and (1) under Count 2 are inappropriate. We agree. The record is devoid of evidence showing that Stone neglected any legal matter entrusted to him relating to his representation of clients. We also fail to see how rule 1-102(A)(3) was violated by the loan arranged by Stone between his friend Lockhart and C.C. Salvage. In his findings of fact, the referee said:
On or about October 19, 1985, the Respondent, acting on behalf of an old friend and client, R.C. Lockhart, arranged for R.C. Lockhart to loan $4,000.00 to C.C. Salvage, Inc. The check which represented the proceeds for this loan was signed by Mr. Lockhart but contained a notation on the face of the check, admittedly made by the Respondent, requiring that $4,800.00 be repaid within 90 days.
This finding is in error. The notation on the check clearly says, “4800 with this 4000.00 repayable 90 days.” The plain meaning of these words is that $4,000 — not $4,800 — was repayable within ninety days. Because no time period was stated within which the additional $800 was to be repaid, no interest rate — usurious or otherwise— can be calculated. The record contains no evidence, other than Chick’s own testimony, showing when the loan was repaid or in what amount.
The referee found the following mitigating and aggravating factors:
1. The Respondent has been a practicing member of The Florida Bar since 1955. In 1981, he received a private reprimand but no specific information about that matter has been made a part of this record. The Respondent has been active in his church during the period of time he has lived in Fort Pierce. The fact that he has practiced law for approximately 33 years with only one reported discipli *463 nary matter is a circumstance which has been considered in mitigation.
2. This Referee sees a couple of aggravating factors in Mr. Stone’s present situation. He has engaged in what amounts to dual representation with clients with conflicting interests. In addition, he has represented clients in this case with whom he had close personal relationships, giving rise to the probability that he was placing his own interests in conflict. He seems to be unable to recognize the severity of the conflicts which arose during his representation of the various parties in the matter.
3. In Count II of the Complaint The Bar charged, and this Referee found, that the Respondent negotiated and effected a clearly criminally usurious loan. It has been suggested that the Respondent was not aware that what he did was criminal in nature. He arranged a loan with an effective annual interest rate of 80%. This Referee has no doubt that he was aware that he was making a usurious loan. He is fortunate that he was not prosecuted for criminal conduct.
We agree with the factors noted in the first two paragraphs. However, in light of our analysis above, we reject the aggravating factor contained in the third paragraph.
Based upon the foregoing, Charles W. Stone is publicly reprimanded. He is ordered to pay the costs of this proceeding. Judgment is entered against him for $2,283.89, for which sum let execution issue.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDonald, shaw, barkett, GRIMES and KOGAN, JJ., concur.